UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 23-23988-CIV-MORENO

JONATHAN E. PERLMAN, Esq., as court-
appointed Receiver of TCA Fund Management
Group Corp., et al.,

        Plaintiff,

vs.

BOLDER FUND SERVICES (USA), LLC,
BOLDER FUND SERVICES (CAYMAN),
LTD., and
BOLDER GROUP HOLDING B.V.,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss **(D.E. 19)**, filed on **February 9, 2024**.

THE COURT has considered the motion, the response in opposition, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED IN PART AND DENIED IN PART.

### A. Background

In this case, Plaintiff Jonathan Perlman, as the court-appointed Receiver for TCA Global Credit Fund, LP; TCA Global Credit Fund, Ltd.; TCA Global Credit Master Fund, LP; and TCA Global Lending Corp. ("the Receivership Entities"), sues the following Defendants: (1) Bolder Fund Services (USA), LLC (formerly known as Circle Investment Support Services (USA), LLC); (2) Bolder Fund Services (Cayman), Ltd. (formerly known as Circle Investment Support Services

(Cayman), Ltd.); (3) and Bolder Group Holdings B.V. (collectively, "Bolder Defendants"). This seven-count Complaint is an action against the Bolder Defendants for assisting, enabling, and/or failing to prevent the alleged "gross mismanagement" of the Receivership Entities by certain former insiders of TCA Fund Management Group Corp ("Fund Management"). [D.E. 1] ¶ 1. Fund Management was the SEC-registered investment advisor for TCA Global Credit Master Fund ("Master Fund"), the primary fund in a "master-feeder" structure, in which "Feeder funds" funneled outside investments to Master Fund, where they invested at the direction of Fund Management. *Id.* The Feeder Funds are TCA Global Credit Fund, LP ("Feeder Fund LP") and TCA Global Credit Fund, Ltd. ("Feeder Fund Ltd.") (together with Master Fund, the "Funds"). *Id.*

Fund Management earned fees based on Master Fund's Net Asset Value, which is a benchmark of investment performance that is published monthly and included in audited financial statements. *Id.* at ¶ 2. The Net Asset Value is the net value of an investment fund's assets less its liabilities. *Id.* The Net Asset Value may represent the value of the total equity, or it may be divided by the number of shares outstanding held by investors, thereby representing the net asset value per share. *Id.* A misstated Net Asset Value disguises the solvency of an investment fund. *Id.* Mr. Perlman alleges that with help from the Bolder Defendants, certain insiders at Fund Management artificially inflated the Net Asset Value. *Id.* The Master Funds' assets turned out to be worth roughly $400 million less than the value reflected in Master Funds' audited financial statements. *Id.* Master Fund's business was to make high-interest, collateralized loans to micro- and small-cap companies. *Id.* at ¶ 3. The Net Asset Value was allegedly inflated by bad loans and "phantom" investment advisory fees, among other things. *Id.*

In Mr. Perlman's view, the Bolder Defendants played a key role in the gross mismanagement of the Funds. *Id.* at ¶ 4. The Bolder Defendants, as the purported "independent"

fund administrator, were responsible for significant aspects of administering the Funds' business, including calculating the Net Asset Value monthly. *Id.* In doing so for the Funds, the Bolder Defendants failed to follow their own internal policies requiring independent verification of assets, and instead allowed certain insiders of Fund Management to re-write the monthly Net Asset Value at will. *Id.* Internal emails reveal that on a regular basis, the Bolder Defendants would ask if their contact at Fund Management was "comfortable" with the Net Asset Value that Bolder Defendants had calculated, and the Bolder Defendants would then revise the Net Asset Value based on whatever instructions were given. *Id.* In doing so, Mr. Perlman alleges that the Bolder Defendants knowingly inflated the Net Asset Value by tens of millions of dollars. *Id.* Thus, he asserts that the Bolder Defendants knowingly and intentionally failed to perform their fundamental financial housekeeping function. *Id.*

Further, per Mr. Perlman, millions of dollars in damages to the Receivership Entities would not have occurred but for the Bolder Defendants' reckless practices and their contributions to the alleged deception. *Id.* at ¶ 5. Accordingly, the Receiver brought this action against Bolder Defendants for damages under Florida law in Counts V, VI, and VII and for damages under Cayman law in Counts I, II, III, and IV. *Id.*

The Bolder Defendants move to dismiss Mr. Perlman's Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), as well as for issue preclusion, forum nonconveniens, and lack of personal jurisdiction. [D.E. 19]. By way of background, the Bolder Defendants cite two related cases that they deem relevant to the potential issue of issue preclusion. In the Bolder Defendants' view, the current allegations and claims are the same as those previously made in *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd. et al.*, 682 F. Supp. 3d 1112 (S.D. Fla. 2023). There, Judge Scola dismissed Bolder Cayman and Bolder USA from *Todd Benjamin* due

3

to a mandatory and enforceable forum selection clause for the Cayman Islands found in a Subscription Agreement between the investor/subscribers and the Receiver Entities. *Id.* The forum clause specifically applied to Bolder as the Administrator of the funds per its terms. *Id.* at 1122. Per the Bolder Defendants, the Receiver filed the present lawsuit in an "obvious effort to circumvent the adverse dismissal order." [D.E. 19.].

Alternatively, the Bolder Defendants argue that the appropriate venue for this case is the Cayman Islands and the case should be dismissed for one of the following reasons: (1) the claims against the Bolder Defendants should be dismissed under forum nonconveniens, (2) the claims against Bolder USA and Bolder Group Holding should be dismissed pursuant to a mandatory forum clause agreed to by Bolder USA; (3) the claims against Bolder Group Holding should be dismissed due to lack of personal jurisdiction; and (4) the claims made under Florida law should be dismissed because a choice-of-law provision applies only Cayman law to this lawsuit.

### B. Issue

The issues for the Court are the following: (1) whether issue preclusion bars the Receiver's lawsuit against the Bolder Defendants, (2) alternatively, whether the Receiver's case should be dismissed for *forum non conveniens* for all Bolder Defendants based on traditional analysis, (3) alternatively, whether Bolder USA and Bolder Group Holding should be dismissed due to the forum selection clause in the Client Services Delegation Agreement, (4) alternatively, whether Bolder Group Holding should be dismissed for lack of personal jurisdiction, and (5) alternatively, whether all claims under Florida law must be dismissed. Although on its face the Defendants' argument pertaining to issue preclusion appears to be valid and meritorious, in an abundance of caution, the Court will wait to address the argument until discovery and will not grant the Motion

4

to Dismiss on these grounds. Thus, the Court's analysis will initially proceed with the second of Defendants' arguments.

### C. Legal Standard

The party seeking to have a case dismissed based on *forum non conveniens* must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 937 (11th Cir. 2005) (quoting *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001) (internal quotations omitted)). "Domestic plaintiffs enjoy a strong presumption that their chosen forum is convenient; foreign plaintiffs . . . enjoy a weaker presumption." *Liquidation Comm'n of Banco Int'l, S.A. v. Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008) (citing *Leon*, 251 F.3d at 1311).

### D. Related Case

The Bolder Defendants argue that the current allegations and claims are the same as those previously made in *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd., et al*, 1:20-CV-21808. The Todd Benjamin Plaintiffs, the Receivership Entities, Bolder Cayman and Bolder USA were involved in prior litigation in this district in that case. Todd Benjamin originally filed a class action against the membership of the Receivership Entities, which were eventually dropped as parties. Bolder Cayman and USA were later added as the funds' Administrator, in addition to three Grant Thornton entities which were the funds' independent auditor. Bolder Group Holding was not a defendant. *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, 682 F. Supp. 3d 1112 (S.D. Fla. 2023).

In sum, the Receiver coordinated with Todd Benjamin's counsel to sue Bolder and the other defendants pursuant to a Litigation Coordination Agreement. *Todd Benjamin*, [D.E. 134] at 15. The Receiver is to distribute any recovery to the funds' investors/subscribers. *Id.*

The *Todd Benjamin* Plaintiffs alleged the same claims as in the current action with various allegations centered around the premise that Bolder improperly calculated the funds' Net Asset Value. *Todd Benjamin*, [D.E. 1]. Bolder Cayman and Bolder USA moved to dismiss based on *forum non conveniens* pursuant to the following forum selection clause found in Subscription Documents:

> "This Subscription Agreement will be governed by and construed in accordance with the laws of the Cayman Islands, without regard to conflicts of laws principles. The Subscriber submits to the exclusive jurisdiction of the Cayman Islands courts with respect to any actions against the Partnership, the General Partner, the Investment Manager and Administrator."

*Todd Benjamin*, [D.E. 58-1, ¶ 16]. The court agreed with Bolder and dismissed the case. In doing so, the Court reasoned that "[t]hese Subscription Documents constituted agreements *between [Bolder] and the General Partner of the Funds (TCA Global Credit Fund GP, Ltd.)*, and their terms were read and signed by investors during each transaction." (emphasis added). *Todd Benjamin*, 682 F. Supp. 3d at 1122. Additionally, the court found that the forum clause applied to both Bolder Cayman and Bolder USA, even though Bolder USA was not a signatory to the agreement, because Plaintiff made no distinction between the Bolder entities in the *Todd Benjamin* Complaint. *Id.* at 1132. The Defendants argue that the same is true in the instant case, where Plaintiff alleges the three Bolder entities operated as one entity. [D.E. 1] ¶¶ 19-37. Therefore, Bolder Cayman and Bolder USA were considered closely related parties and the forum clause applied to both. After Bolder was dismissed, the *Todd Benjamin* Plaintiffs filed a Second

Amended Complaint dropping the Bolder defendants. *Todd Benjamin*, [D.E. 105, n.1]. The *Todd Benjamin* Plaintiffs did not appeal, and the case is ongoing. *Id.*

However, Mr. Perlman responds that issue preclusion does not apply because (1) the issues are not identical, (2) the issues were not actually litigated or decided in Judge Scola's *Todd Benjamin* case, and (3) the Receiver never had an opportunity to litigate these issues. [D.E. 26]. Although on its face the Defendants' argument pertaining to issue preclusion appears to be valid and meritorious, in an abundance of caution, the Court will wait to address the argument until discovery and will not grant the Motion to Dismiss on these grounds. Thus, the Court's analysis will initially proceed with the second of Defendants' arguments.

### E. Legal Analysis

*Forum Non Conveniens*

The Bolder Defendants argue that the case should be dismissed for *forum non conveniens* for all Bolder Defendants. They point to Judge Scola's holding in *Todd Benjamin* to argue that "forum-selection clauses should control except in unusual circumstances." [D.E. 19] (quoting *Todd Benjamin*, 2023 WL 4457458 at *4-5). In their view, the Receivership Entities, which are Cayman-based funds, agreed in the Revised Services Agreement to "irrevocably . . . submit to the non-exclusive jurisdiction of . . . the Cayman Islands over any claim or matter arising under or in connection with this agreement."[1] *Todd Benjamin*, at *5. The Bolder Defendants are under the impression that "1) Cayman is an adequate forum; 2) public [and private] interest factors favor Cayman; and 3) these same claims can be reinstated in Cayman." *Id.* at *8-9. The Court must

---

[1] Bolder Cayman entered into this agreement with the Receivership Entities on March 16, 2016. It contained the following: "This Agreement shall be governed by and construed in accordance with the laws of the Cayman Islands. Each party irrevocably agrees to submit to the non-exclusive jurisdiction of the courts of the Cayman Islands over any claim or matter arising under or in connection with their Agreement."

7

determine whether that characterization is true to determine whether dismissal is warranted on these grounds.

Mr. Perlman counters that the Cayman Islands is *not* an adequate alternative forum "because a court in the Cayman Islands would not recognize the Receiver's standing to bring claims on behalf of the Receivership Entities; and for the same reason, the Receiver could not reinstate these claims in that Court." [D.E. 26]. Further, Mr. Perlman notes that Judge Scola found that Cayman was adequate not for the Receiver—but for *individual investors*. *Id.* In his view, Judge Scola never considered whether Cayman was an adequate forum for the Receiver because the Receiver's claims were not at issue in *Todd Benjamin*.

The Court disagrees with Mr. Perlman on the adequacy of the Cayman Islands as an alternative forum. Claims can be brought on behalf of the Receivership Entities in this case because the action is not based on the penal laws of the United States. Claims for breach of contract, negligence, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud are not penal in nature. If they were, Mr. Perlman's argument would be more persuasive. These claims are available to any private plaintiff corporation in the United States and are not claims unique to the Receiver. As it would be permissible for the companies themselves to bring the claims in the Cayman Islands, the mere fact that management has been displaced by the Receiver does not disentitle the corporate bodies to such relief. Thus, the Receiver is permitted to bring an action on behalf of the funds based on contract and tort in the Cayman Islands. Therefore, it is an adequate alternative forum and passes the first prong to dismiss for *forum non conveniens*.

Next, the Court weighs the second prong of the test: whether public and private factors favor dismissal. Relevant public interests include "the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts,

8

and the value of having local controversies litigated locally." *Renta*, 530 F.3d 1339 at 1356-57. The Bolder Defendants' argument hinges on their assertion that Judge Scola already decided this factor in *Todd Benjamin*. Mr. Perlman, however, argues that Judge Scola's decision in favor of the public interest was driven by the choice of law provision in the Subscription Agreement—which he claims is irrelevant here. In Mr. Perlman's view, the public interests favor the Receiver because Bolder employees located in Florida committed torts in Florida through conduct carried out in Florida. If that is the case, Florida could have a legitimate interest in regulating such conduct. Further, per Mr. Perlman, this proceeding is ancillary to the Enforcement Action, which seeks to redress violations of U.S. securities laws. Thus, the Receiver's chosen forum in the United States could coincide with the interest of protecting United States investors. *See Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 221 (S.D.N.Y. 2019).

The Bolder Defendants make the argument that if this case is dismissed in favor of Cayman, then everything could be addressed in one forum and that this Court would not need to apply Cayman law. Although those points are well taken, the public interest factors are fairly balanced out on both sides; in other words, the public interest factors do not *weigh in favor of* dismissal, as is required. The private interest factors come out similarly. "Pertinent private interests of the litigants include ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment." *Renta*, 530 F.3d 1339 at 1356.

In balancing these factors, the court must apply a "strong presumption" in favor of the Receiver because he is a U.S. citizen; Bolder must show "extreme circumstances" to overcome that presumption. *Renta*, 530 F.3d at 1356; *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004). On the one hand, Mr. Perlman argues

that proceeding in this Court will be more convenient than litigating in the Cayman Islands because the witnesses are in Florida, the Receiver is in Florida, the former officers of Fund Management are largely in Florida, Fund Management's main office was in Florida, and the relevant individuals from Bolder who performed the services at issue operated from Bolder's office in Florida. Moreover, even Bolder Cayman lacks a physical presence in Cayman and has no office, employees, or operations there. On the other hand, Bolder argues that the main parties are incorporated in Cayman and agreed to be present in Cayman in multiple different contracts for any disputes and that multiple expert witnesses will be in Cayman. Although the case that Bolder makes is strong, the factors do not *weigh in favor of* Bolder in the way that they are required to for the Court to dismiss. With public and private factors not necessarily weighing in favor of Bolder, the second prong of the *forum non conveniens* test has not been met. Without the second prong, the case cannot be dismissed for *forum non conveniens*.

*Mandatory Forum Clause*

The Bolder Defendants argue that Bolder USA and Bolder Group Holding should be dismissed due to the Mandatory Forum Selection Clause in the Client Services Delegation Agreement. They assert that the forum selection clause in the Client Services Delegation Agreement between Bolder Cayman and Bolder USA is mandatory and enforceable, claiming that it is "no different than the clause enforced in *Todd Benjamin* and even more strongly worded in favor of Cayman." [D.E. 19]. Mr. Perlman, however, contends that the forum selection clause is between two Bolder entities; in other words, no Receivership Entity is a party, and the Delegation Agreement should not apply to him. However, the Bolder Defendants properly point out that the Revised Administration Agreement gave permission to Bolder Cayman to retain agents to carry out its services for the TCA funds with the prior consent of the funds. Section 2.02 states that "the

Administrator may employ and pay at the expense of the Funds any agents . . . to transact any business or do any act required to be transacted in the execution of the terms of this Agreement." [D.E. 1-1 at 4]. Additionally, the Complaint alleges that the TCA funds dealt directly with Bolder USA, which operated "as one" with the other two Bolder Defendants. [D.E. 1 at 20, 28, 30, 32-34].[2] A contract binding on one Bolder defendant is binding on them all, due to the "close relationship test." *See Todd Benjamin*, 682 F. Supp. 3d at 1128 ("In order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound."). Here, the distinct entities are treated as "one joint operation"; therefore, based on the Plaintiff's own language, the Court finds a sufficiently "close relationship" to apply the mandatory forum clause to TCA. Thus, Bolder USA and Bolder Group Holding are dismissed.

*Personal Jurisdiction*

The Bolder Defendants made an additional argument that Bolder Group Holding should be dismissed for lack of personal jurisdiction. However, because the Court dismisses Bolder Group Holding as a result of the mandatory forum clause, the Court need not address that argument.

*Florida Law Claims*

Although the Bolder Defendants argue that the choice of law provision precludes the Florida law claims, the Court does not agree. Although the choice of law provision in the Agreement states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the Cayman Islands[,]" that language is "exceedingly narrow" and does not apply to the Receiver's extracontractual Florida law claims. [D.E. 1-1 § 16.01]. *See Nicor Int'l v. El Paso*

---

[2] In fact, the Complaint states that "Bolder Holdings and its subsidiaries, including Bolder USA and Bolder Cayman, continue to operate as one and the same company, using the name 'Bolder.'" [D.E. 1 at 10].

*Corp.*, 318 F. Supp. 2d 1160, 1164-65 (S.D. Fla. 2004) (describing this type of choice-of-law provision as "exceedingly narrow"). Further, the Eleventh Circuit instructs us that "[t]he effect of this clause is narrow in that only the release itself is to be construed in accordance with the laws of the State of [Florida]." *Green Leaf Nursery v. E.I. DuPont De Nemours*, 341 F.3d 1292, 1300 (11th Cir. 2003). Moreover, the clause "does not refer to related tort claims or to any and all claims or disputes arising out of settlement or arising out of the relationship of the parties." *Id.* In fact, this type of "narrow choice-of-law clause calls for the application of the selected law to determine only the scope and effect of the release [and not a claim for] monetary damages rather than a form of relief that would actually affect the release, such as avoidance." *Id.* Therefore, the Receiver has correctly pled his breach of contract claim under Cayman law and his extracontractual tort law claims under Florida law.

## F. Conclusion

In conclusion, the Court GRANTS the Motion to Dismiss only as to Bolder USA and Bolder Group Holding—but not as to Bolder Cayman—based on the Mandatory Forum Selection Clause in the Client Services Delegation Agreement. The case remains open.

DONE AND ORDERED in Chambers at Miami, Florida, this 26 of August 2024.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record